Filed 7/7/26  In re J.G. CA2/7

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | B350223 |
| | (Los Angeles County Super. Ct. No. 25CCJP01374A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JESUS G.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tara Newman, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

The father and mother in this case are biological siblings whose child is in juvenile dependency proceedings. Jesus G. (Father) appeals from the court's order denying him family reunification services with his child, Jacob G. (born September 2024) under certain statutory bypass provisions. The court found Father had been convicted of a violent felony and had previously failed to reunify with Jacob's older half-sibling, and that Father had not met his burden of proving by clear and convincing evidence that reunification services would be in Jacob's best interest. On appeal, Father only challenges the juvenile court's best interest determination. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *Father's Prior Dependency and Criminal Proceedings*

In 2003, the juvenile court sustained a dependency petition on behalf of Jacob's paternal half-sibling, Jocelyn G. (born July 2002), based on domestic violence by Father against Jocelyn's mother and substance abuse by Father and Jocelyn's

_____

[1] Mother is not a party to this appeal. We therefore limit our discussion of facts and findings to those most relevant to Father.

2

mother.  The case closed in 2005 with Jocelyn in a legal guardianship, after Father failed to reunify with her.

In 2005, Father was convicted of felony second degree robbery (Pen. Code, § 211) and felony first degree burglary (*id.*, § 459).  Robbery (of any type) and first degree burglary are "violent felony" offenses as defined in Penal Code section 667.5, subdivision (c).  (See *id.*, § 667.5, subds. (c)(9), (c)(21).)  In 2008, Father was convicted on a new charge of first degree burglary (*id.*, § 459) and was sentenced to 20 years in prison under the three strikes law (*id.*, §§ 667, subd. (a)(1); 667.5).  Father's criminal history dates to 1994 and includes additional arrests and convictions for weapons possession and sale, controlled substance possession, parole violations, and grand theft.

B.  *Section 300 and Section 342 Petitions*

Mother and Father are biological siblings in a relationship that began around 2022 or 2023.  Father is nine years older than Mother.  In September 2024, at the time of Jacob's birth, the Los Angeles Department of Children and Family Services (Department) received a referral alleging that Mother had given birth to a baby boy, she had another child in permanent placement, and the baby's father had an extensive criminal history.

In May 2025, the Department received a referral after police responded to a report of an altercation between Father and Mother on May 2, in which Mother reported Father pushed her while she was holding Jacob and she was scratched on the elbow.  Father was arrested and charged with domestic abuse (Pen. Code, § 273.5, subd. (a)) and violation of parole (*id.*, § 3000.08).  After his May 2 arrest Father was sentenced to 140 days in jail

3

for evading his parole officer. A stay-away order was also issued, permitting only electronic contact between Father and Mother.

A prior police report of domestic violence between Father and Mother in April 2025 reported an "assault that caused breath complaints of strangulation/pain in neck," with the suspect gone by the time law enforcement arrived. On May 2, Mother told the Department that Father hit her repeatedly on the left side of the torso during the incident in April 2025, which arose from a parenting disagreement, and that she called the police but Father left before they arrived. Mother also reported Father punched her on the shoulder during an incident in December 2023 as well, after he accused her of cheating.

At the time of the referral Father and Mother were living together with Jacob in the home of their grandmother (Jacob's great-grandmother). When the Department and police officers returned to the home on May 7 and attempted to interview Mother, she exhibited erratic and combative behavior, including yelling, shouting bible verses and referencing Lucifer, and talking to herself, appearing "disconnected from reality." At one point while seated on the couch she also fell asleep and became unresponsive to attempts to wake her, with Jacob sliding out of her arms. Jacob was detained and placed in protective custody, and Mother was placed on a psychiatric hold. Mother tested positive for methamphetamine during her psychiatric admission. Mother and Father's uncle was interviewed and he stated Mother's mental health issues started when Father moved into the home in 2022.

On May 9, 2025, the Department filed a Welfare and Institutions Code section 300 petition alleging Jacob was at risk of serious physical harm due to domestic violence between Father

4

and Mother and Mother's mental health challenges.[2]  The petition was subsequently amended to add Father's past history of domestic violence, criminal history, and failure to reunify with Jacob's paternal half-sibling.

In August 2025, the juvenile court held a jurisdictional hearing and sustained the petition under section 300, subdivisions (b)(1) and (j), related to counts that alleged the parents' domestic violence in Jacob's presence, Mother's history of mental health and emotional problems and substance abuse, and Father's history of domestic violence and failure to reunify with Jacob's half-sibling.

On August 15 and August 21, 2025, while the disposition hearing was pending, Father tested positive for methamphetamine, and he declined to submit to drug tests on August 29 and September 3.  On September 8, the Department filed a section 342 subsequent petition alleging Jacob was at risk of serious physical harm as a result of Father's current methamphetamine abuse.

C.    *Disposition Hearing and Bypass Order*

On October 30, 2025, the juvenile court held a combined hearing on the section 300 and section 342 petitions, and it sustained the 342 petition.  The court stated, "Father does have an extensive history of substance abuse.  I think that he is doing very well in his sobriety at this time.  However, it is two months, and given his long history of use, I do find that there is still a risk as relapse could occur."

---

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

At the disposition stage for both petitions, the Department asked the court to bypass reunification services for the parents, and Jacob's counsel and each parent's counsel asked the court to order reunification services.

The reports before the court showed Father enrolled in a 26-week parenting program and a 52-week domestic violence management program on August 15, 2025, but was discharged from both for failure to attend. He then re-enrolled on September 12 and had participated in six weekly sessions each of parenting and domestic violence classes, most recently on October 24. Father admitted to methamphetamine use in August but stated it was to have energy to care for Jacob. Father and Mother also still resided in the same building, in separate areas, and maintained unrestricted contact with each other. Mother's therapist reported Father accompanied Mother to and from appointments, "does not le[t] [M]other out of his sight," and the parents' relationship was a "concern" for the therapist because "they are always together."

Father's attorney acknowledged there was domestic violence in half-sibling Jocelyn's prior case, as in Jacob's case, and that Father failed to complete services then or reunify with Jocelyn. However, he argued "the court can find by clear and convincing evidence that it is in [Jacob's] best interest that [Father] is offered the chance to reunify." He argued Father had made reasonable efforts to treat his past issues, had been sober for the past two months since his relapse, was now enrolled in a domestic violence program, and had no new domestic violence incidents since May 2025. Father's attorney acknowledged Father dropped out of his programs "briefly" around the time of his relapse, and that the parents' current living situation "doesn't

6

look wonderful" given the criminal court's stay-away order against Father, but Los Angeles was a "very expensive county" and Mother was "making every effort to move." He argued that although Father failed to complete services with Jocelyn, Father "was also incarcerated during her case and we know services aren't easily accessed." He stated Father cried at the prospect of no reunification with Jacob, and said, " 'I love my son and I just want this chance to reunify.' "

As for the violent felony history, Father's attorney acknowledged Father's past violent felony conviction and recent "30 or 40 days" incarceration for violation of parole after his May 2025 arrest. However, he argued the conviction was 21 years ago, with no evidence a child was present, and Father had served a lengthy sentence and had not committed any new crimes. Father confirmed to the court that "[o]n May 2nd when [he] was arrested for domestic violence, [he] did 34, 35 days" for violating parole, and that he was presently in active violation of parole again for not checking in with his parole officer and "might do another 34 days."

The Department argued the length of time since Father's felony conviction was not a relevant consideration, and the court should take into account Father's active parole violation status; his methamphetamine use while the disposition hearing in this case was pending (and the explanation that it was to stay awake to care for Jacob); his living situation in violation of the criminal court's stay-away order; his "overbearing and controlling" behavior toward Mother, and Mother's therapist's concern about Father's constant presence. The Department stated that under the bypass provisions the court did not have "any leeway to provide [reunification services] to the parents at this time."

The juvenile court declared Jacob a dependent of the court and removed him from parental custody. The court ordered family reunification services for Mother. Although the court noted that Mother previously had reunification services and parental rights terminated as to Jacob's maternal half-sibling, it found Mother had made a reasonable effort to treat her issues and that it was in Jacob's best interests for her to receive reunification services.

As to Father, the juvenile court stated, "the situation is different." The court noted Father's reunification services were previously terminated for his older child, after a petition was sustained for domestic violence by Father. Although Father had enrolled in programs and had "begun to address the issues" in the last two months, the court found that it did not "believe that he has made reasonable efforts to treat the problems," given how long ago the prior case was and that there was "additional domestic violence as recently as May in this case." The court also had "a lot of concerns about the power and control dynamic of the relationship" between Father and Mother. Further, although the prior felony conviction was "some time" ago, the court found "the fact that the Father is in violation of the parole is concerning."

The juvenile court ordered that reunification services be bypassed for Father based on section 361.5, subdivision (b)(10) and (b)(12). The court ordered Father to have monitored visits with Jacob a minimum of three times per week, three hours per visit, with discretion to the Department to liberalize.

Father timely appealed.

**DISCUSSION**

A. *Governing Law and Standard of Review*

"A juvenile court is generally required to order reunification services for a parent 'whenever a child is removed' from that parent's custody." (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1271 (*Jayden M.*); accord, § 361.5, subd. (a); see *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120 (*Jennifer S.*).) Several exceptions to this requirement exists under the "bypass provisions" of section 361.5, subdivision (b).

Two bypass provisions are relevant here. First, reunification services need not be provided if the parent has been convicted of a violent felony. (§ 361.5, subd. (b)(12).) Second, "[r]eunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, . . . [t]hat the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling . . . [and] has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ." (§ 361.5, subd. (b)(10)(A).) "A 'reasonable effort to treat' a problem" focuses "on the parent's effort," "not whether the parent has ' " 'cure[d]' " ' or ' "abolished" ' the problem [citations], or whether the parent has 'attained' a ' "certain level of progress." ' . . . It is not enough to show 'any' effort, even a genuine one. [Citation.] '[L]ackadaisical or half-hearted efforts' will also not do." (*Jayden M., supra,* 93 Cal.App.5th at p. 1276, italics and fn. omitted; accord, *Jennifer S., supra,* 15 Cal.App.5th at p. 1121.)

A court may deny reunification services to a parent if it finds "one or more" of the bypass provisions applies. (*Tyrone W.*

9

*v. Superior Court* (2007) 151 Cal.App.4th 839, 846; see *In re A.E.* (2019) 38 Cal.App.5th 1124, 1141 [court may deny reunification if "any of [the] 17 enumerated bypass provisions apply"].) "By making the grant of reunification services discretionary in these situations, the bypass provisions aim to 'focus reunification efforts' and resources on the cases 'most likely to succeed' with reunification." (*Jayden M., supra*, 93 Cal.App.5th at p. 1271.)

If the Department carries its initial burden of showing one or more of the bypass provisions apply (which is uncontested here), "the burden shifts to the parent to prove that it is in the child's best interest for the juvenile court to exercise its discretion to provide reunification services in this case." (*Jayden M., supra,* 93 Cal.App.5th at p. 1272; see § 361.5, subd. (c)(2) ["The court shall not order reunification for a parent or guardian described in paragraph . . . (10) . . . [or] (12) . . . of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child."].)[3]

In determining whether the parent proved reunification services are in the " 'best interest of the child' " under section 361.5, subdivision (c)(2), relevant factors include "the parent's ' " 'history,' " ' " "the parent's ' " 'current efforts and fitness,' " ' " "the ' " 'gravity of the problem' " ' that led to the

---

[3]     "[S]ection 361.5, subdivision (a), provides that reunification services are mandatory unless a bypass provision applies; section 361.5, subdivision (b), lists the bypass provisions and provides that reunification services are discretionary if any of them [applies]; but section 361.5, subdivision (c), provides that *denial* of reunification services is *mandatory*, not discretionary, with respect to nearly all of the bypass provisions, unless the court makes certain countervailing factual findings." (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1141.)

assertion of dependency," the " ' "strength of the bonds" ' "
between the child and the parent and the child and the current
caregiver, and "the ' " 'child's need for stability and
continuity ' " ' " (See *Jayden M., supra,* 93 Cal.App.5th at
pp. 1271, 1272-1273; accord, *In re G.L.* (2014) 222 Cal.App.4th
1153, 1164; *In re A.G.* (2012) 207 Cal.App.4th 276, 281 (*In re
A.G.*).) There must be " ' "some 'reasonable basis to conclude' " '
that reunification is possible; if it is not, offering reunification
services that are destined to fail is not in the child's best
interest." (*Jayden M.*, at p. 1273.) Other relevant "factors
indicating that reunification services are unlikely to be
successful" include "[t]he failure of the parent to respond to
previous services, the fact that the child was abused while the
parent was under the influence of drugs or alcohol, a past history
of violent behavior, or testimony by a competent professional that
the parent's behavior is unlikely to be changed by services."
(§ 361.5, subd. (c)(4).)

"We review a juvenile court's determination that the
Department has carried its initial burden in the first step for
substantial evidence," and "[w]e review a juvenile court's
assessment of what is in the child's best interest for an abuse of
discretion." (*Jayden M., supra,* 93 Cal.App.5th at p. 1273.)

B.   *The Court Did Not Abuse Its Discretion by Bypassing*
     *Reunification Services for Father*
     As stated, Father does not challenge the juvenile court's
determination that the Department met its burden of
demonstrating that the two statutory bypass exceptions at issue

11

in this case applied, section 361.5, subdivisions (b)(10) and (12).[4] Accordingly, we examine only whether the juvenile court abused its discretion by concluding it was not in Jacob's best interest to provide Father with reunification services. Before examining the juvenile court's assessment of the relevant factors, we address Father's procedural arguments.

### 1. *Procedural arguments*

First, Father contends the juvenile court's ruling was based on the Department's "erroneous representation" there was no "leeway" to grant reunification for the parents, rather than a discretionary determination based on consideration of Jacob's best interests. It was clear, however, the court exercised its discretion and did not rely on the Department's representation of the scope of its authority. The Department made this argument as to both parents, and yet the court granted reunification services to Mother based on its conclusion that it was in Jacob's best interests. By contrast, the court determined "the situation is different" for Father. The court thus plainly understood its

_____

[4] The opening brief argues Father made "reasonable efforts" to address certain preexisting issues, but Father does not argue the juvenile court erred by finding the bypass provision under section 361.5, subdivision (b)(10) applied. That subdivision requires, in relevant part, a finding that after failing to reunify with the sibling or half sibling the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling." (§ 361.5, subd. (b)(10)(A).) Section 361.5, subdivision (b)(12), by contrast, requires no such finding. In all events, Father discusses his "reasonable efforts" only in the context of his challenge to the juvenile court's best interest determination.

12

authority to bypass reunification services for each parent was discretionary.

Next, Father argues the juvenile court was required to make an express finding that it was not in Jacob's best interest to provide reunification services to Father and that this failure means we should not imply findings in support of the order. Although it would have been preferable for the juvenile court to state that Father had not met his burden of demonstrating it was in Jacob's best interest to order reunification services, we may examine the record and imply any findings necessary to support the court's order. "Ordinarily, of course, appellate courts will indulge all reasonable inferences favorable to the judgment. But this familiar doctrine becomes potentially subversive where the Legislature requires the trial court to make an express finding. Such a requirement may be deprived of all force if appellate courts feel free to infer a supporting finding where the trial court has left the record silent. For that reason the doctrine of implied findings may be given limited scope where an express finding is required." (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078; see also *Jayden M., supra,* 93 Cal.App.5th at p. 1270, fn. 6 ["specific findings are not required absent a statute so requiring"].)

Father does not cite any statute requiring the juvenile court to make an express finding it was not in Jacob's best interest for Father to receive reunification services. Section 361.5 does not contain such a requirement. (*In re S.G.* (2003) 112 Cal.App.4th 1254, 1260 [rejecting the argument that "the failure to make findings necessary for a denial of services under section 361.5, subdivision (b)(6) mandates reversal" and instead inferring findings supported by substantial evidence].) Although "the juvenile court lacks the authority to *order*

13

reunification [under section 361.5, subdivision (c)] unless it expressly makes [the best interests] finding by the requisite standard of proof" (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 107, italics added; accord *In re A.M.* (2013) 217 Cal.App.4th 1067, 1076), this statutory provision does not require the court to make an express finding when the court denies reunification services because it is *not* in the child's best interest.  (See § 361.5, subd. (c)(2) ["The court shall not order reunification for a parent or guardian described in paragraph . . . (10), [or] (12), . . . of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child"].)[5]

     2.    *Best interest of child factors*

Father cites the following factors from *In re A.G.*, *supra*, 207 Cal.App.4th at page 281 to support his argument that reunification services are in Jacob's best interest: "(1) the parent's current efforts, (2) the parent's fitness, (3) the parent's history, (4) the seriousness of the problem that led to the dependency, (5) the strength of the parent-child and caretaker-child bonds, and (6) the child's need for stability and continuity." The opening brief, however, advances no argument regarding the third, fourth, and sixth factors, and makes "reasonable efforts"

---

[5]    Father cites *In re Abram L.* (2013) 219 Cal.App.4th 452, at page 463, but that case does not help him because it does not address the statutory provision at issue here.  (See *id*. at p. 463 ["it is inappropriate to make implied findings when the juvenile court fails to make express findings as required by section 361.2, subdivision (c).  We thus decline to make implied findings in this case"].)

arguments as to the factors that are addressed.  Although Father does not challenge the juvenile court's determination that the bypass provisions apply to him and section 361.5, subdivision (b)(12), has no "reasonable efforts" requirement, (see footnote 4, *supra*), in an abundance of caution, we first examine whether substantial evidence supports the juvenile court's finding that father did not make reasonable efforts to address his prior history of domestic violence and substance abuse.

### a.    Reasonable efforts

"[I]n assessing whether a parent made a reasonable effort to address a problem from a prior dependency case involving the current child's sibling or half sibling and where reunification services or parental rights were terminated under subdivision[] (b)(10) . . . of section 361.5, the juvenile court should consider the entire time span between, at the one end, the earliest time a sibling or half sibling was removed from the parent's custody due to that problem and, at the other end, the dispositional hearing in the current case." (*Jayden M.*, *supra,* 93 Cal.App.5th at p. 1274.)  "Reasonableness is assessed by looking to (1) the duration of the parent's effort, (2) the 'extent and context' of the parent's effort, and (3) other factors related to the 'quality and quantity of those efforts.'  [Citation.]  The parent's progress, or lack thereof, 'both in the short and long term'—while not dispositive—is nevertheless relevant 'to the extent it bears on the reasonableness of the effort made.' " (*Id.*, at p. 1276, italics omitted; accord, *Jennifer S., supra,* 15 Cal.App.5th at p. 1120; *R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 915.)

15

Here, examining Father's efforts to address his domestic violence and substance abuse issues from the time of Jocelyn's removal in 2003 through the disposition hearing for Jacob in 2025, substantial evidence supports the juvenile court's finding that although Father had recently "begun to address the issues," he had not made sufficient "reasonable efforts" to do so. As the court observed, Jocelyn's removal was over 20 years ago, but Father's domestic violence persisted in repeated incidents of physical abuse against Mother, including in December 2023, April 2025, and May 2025 in Jacob's presence. And in August 2025, while the disposition hearing was pending, Father tested positive for methamphetamine (which he stated was to stay awake to care for Jacob) and twice declined to submit to drug testing thereafter.

Father argues he has made recent efforts to address his problems. He enrolled in domestic violence and parenting programs and had attended six sessions of each at the time of the disposition hearing in October 2025. He had also enrolled in an outpatient drug treatment program after his most recent relapse in August 2025, and he tested negative several times. But the evidence also shows this effort was inconsistent. Father first enrolled in domestic violence programming on August 15, 2025, but was discharged for failure to attend. He re-enrolled on September 12 and maintained weekly attendance until the hearing six weeks later. And although he enrolled in drug treatment in August 2025, the court noted "there is still a risk as relapse could occur."

Father's attempts at addressing his domestic violence and substance abuse issues are commendable, but substantial evidence supports the juvenile court's finding that Father did not

16

demonstrate by clear and convincing evidence that his six-weeks of effort immediately before disposition constituted "reasonable efforts" against the backdrop of Father's entire history.[6] (See *Jayden M., supra,* 93 Cal.App.5th at pp. 1276-1277 ["four months of uneven effort is a drop in the bucket when viewed in the larger context of a 20-year history" of drug abuse; "[a]gainst this backdrop, the juvenile court had ample grounds to find that mother's recent effort to treat her drug addiction was not 'reasonable' "].)

> b.     Father's current efforts, parental fitness, and strength of parent-child bond

As stated, Father does not address all the factors he cites as relevant to a court's determination of whether reunification services are in Jacob's best interest. And even considering those factors he does address, we conclude Father has not demonstrated the juvenile court abused its discretion by declining to order reunification services.

As to Father's current efforts, he argues he was making "reasonable efforts" to address his substance abuse issues by being in a treatment program addressing relapse prevention and

---

[6]     Father is also not without a remedy if he continues to make progress: "If [a parent's] efforts are commendable but too short term at the time of the dispositional hearing for the juvenile court to conclude they are 'reasonable' when viewed through the prism of the *total* relevant time period, the parent can always seek to modify the bypass order and obtain an order granting reunification services by filing a petition under section 388" alleging changed circumstances. (*Jayden M., supra,* 93 Cal.App.5th at p. 1275.)

17

that he "tested negative 16 times," and as to his domestic violence issues that he was in a parenting class and domestic violence prevention program, and he maintained consistent visitation with Jacob. But the juvenile court also had evidence before it that Father had a long history of domestic violence with two different mothers of his children, incidents of physical violence against Mother as recently as May 2025 with Jacob present, and an ongoing "power and control dynamic" toward Mother that concerned her therapist and the court at the time of the hearing. Father also had an equally long history of drug abuse with a relapse of methamphetamine use two months before the disposition hearing, and he justified his methamphetamine use by stating it was to have energy to take care of Jacob. Father also had an extensive criminal history with three violent felony convictions and multiple parole violations, recently served "30 or 40 days" in custody for violation of parole after his May 2025 arrest, and admitted he was again in violation of parole at the time of the hearing. Against this backdrop, the juvenile court was within its discretion to conclude that Father's recent six weeks of classes and sobriety were insufficient.

As to Father's parental fitness, he contends he has "take[n] responsibility for the [domestic violence, substance abuse, and criminal] issues that caused the dependency" by, among other things, "admit[ing] he was using methamphetamine" and being "consistent with services" and visitation. Father also argues he would benefit from services and that he made "reasonable efforts" to address his "past history." As with the prior factor, the juvenile court also had before it evidence regarding Father's long history of domestic violence and substance abuse such that we cannot say the court abused its discretion by not ordering

18

reunification services.  And while it is true that father's violent felony conviction was "over 20 years earlier," the juvenile court was concerned regarding Father's on-going criminal history, violation of the criminal stay away order, and that he was in violation of probation at the time of the disposition hearing. Indeed, Father's failure to reunify with Jocelyn, his violent felony convictions, and his recurrent physical domestic violence against Mother many years after Jocelyn's dependency case also reflect the gravity of the problems that led to the assertion of dependency over Jacob (*Jayden M.*, *supra,* 93 Cal.App.5th at pp. 1272-1273), as well as Father's "failure . . . to respond to previous services" indicate that reunification services are likely to be unsuccessful.  (§ 361.5, subd. (c)(4)).

As to the strength of the parent-child bond, Father argues he "maintained his relationship with his son" and had positive interactions with Jacob.  He also argues that this case is like *In re G.L.* (2014) 222 Cal.App.4th 1153 (*In re G.L.*), where the juvenile court granted services to the offending parent (mother), in part, because services were offered to the nonoffending parent (father).  *In re G.L.* does not help Father because the nonoffending parent's receipt of services was not a basis for affirmance.  (See *id.* at pp. 1164-1166.)  In that case the minor appealed the juvenile court's order that mother was entitled to reunification services despite a history of substance abuse, but the appellate court affirmed because the mother had met her burden of demonstrating that "reunification, as opposed to reunification services, was in the best interests of G.L. as set forth under subdivision (c) of section 361.5."  (*In re G.L.* at p. 1166.)  And unlike the mother in *In re G.L.*, Father has not met his burden.

19

Additionally, in its disposition order, the juvenile court charted a reasonable course to protect the parent-child bond by providing visitation to Father three times a week for three hours per visit, with discretion to the Department to liberalize. This order authorized expanded visitation so that Jacob could maintain and build his bond with Father, while bypassing reunification services given the lack of a reasonable basis to believe reunification would succeed. (See *In re G.L., supra*, 222 Cal.App.4th at p. 1164 [" 'there must be some "reasonable basis to conclude" that reunification is possible before services are offered' "].)

Under the circumstances, Father has not demonstrated the juvenile court abused its discretion.

## DISPOSITION

The juvenile court's order bypassing reunification services for Father is affirmed.

MARTINEZ, P. J.

We concur:

SEGAL, J.

FEUER, J.

20